UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID BOWDLER,

    Plaintiff,

v.    Case No: 2:13-cv-539-FtM-38CM

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER[1]

This matter comes before the Court on Defendant State Farm Mutual Automobile Insurance Company's Objections to Magistrate's Order Regarding Plaintiff's Motion to Compel Production (Doc. #35) filed on May 28, 2014. Plaintiff David Bowdler has not responded, and the time to do so has expired. Thus, this matter is ripe for review.

## BACKGROUND

Plaintiff purchased automobile insurance from Defendant that included $2,000,000 in underinsured motorist coverage. (Doc. #2 at ¶ 3). Plaintiff was later injured in an automobile accident caused by another driver. (Doc. #2 at ¶¶ 4-6). The other driver was an "underinsured motorist," as his policy limit did not cover all of Plaintiff's damages.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

(Doc. #2 at ¶ 7).[2] Plaintiff settled with the other driver for the policy limit and then filed an underinsured motorist benefits claim ("UM claim") with Defendant per his automobile policy. (Doc. #29 at 2). Because the parties could not reach an agreement on the amount of Plaintiff's damages, Plaintiff commenced an uninsured motorist breach of contract action against Defendant in state court (hereinafter "underlying litigation"). (Doc. #29 at 2). The parties unsuccessfully mediated the case (hereinafter "underlying mediation"). (Doc. #29 at 2). The case proceeded to trial in April 2011, where a jury awarded Plaintiff damages totaling $3,019,900.55. (Doc. #2 at ¶ 16). Judgment was thereafter entered against Defendant, which it has yet to pay. (Doc. #2 at ¶ 16).

On July 18, 2013, Plaintiff commenced the instant first-party statutory bad faith action against Defendant. (Doc. #2).[3] Defendant allegedly mishandled Plaintiff's UM claim from the underlying litigation by, among other things, not promptly paying him UM benefits and not timely settling the UM claim. (Doc. #2 at ¶ 13).

On July 22, 2013, Plaintiff served Defendant with a request for production (Doc. #27-1), seeking the claim files relating to his UM claim. (Doc. #27-1 at ¶ 1). In response, Defendant withheld or redacted six (6) separate activity log notes ("Activity Logs") that purportedly memorialized conversations between the parties and the mediator during the underlying mediation, as well as analyzed that mediation. (Doc. #27-2). Defendant maintained that the Activity Logs were protected under Florida's "mediation privilege" and were irrelevant to the instant litigation. (Doc. #27-2; Doc. #35 at 5). Plaintiff moved to compel Defendant to produce these logs (Doc. #27) on two grounds: (1) the Activity Logs

---

[2] In Florida, an "uninsured motorist" may be, as in this case, a driver with coverage below the amount necessary to cover damages inflicted on another. See Fla. Stat. § 627.727(3)(b).

[3] Defendant removed the case to this Court based on diversity jurisdiction. (Doc. #1).

were not privileged communications because the parties in the underlying mediation were the same two parties in this bad faith action; and (2) Florida law renders insurance carriers' underlying claim files as discoverable in bad faith actions over work-product objections. (Doc. #27 at ¶ 4) (citing Allstate v. Ruiz, 899 So. 2d 1121, 1126 (Fla. 2005)). In an Order dated May 14, 2014, Judge Mirando granted Plaintiff's motion to compel, finding the Activity Logs were not covered under Florida's mediation privilege and were relevant to the bad faith claim. (Doc. #29 at 5-6). Defendant timely objected. (Doc. #29).[4] As explained fully below, the Court finds no reason to overturn Judge Mirando's Order (Doc. #29).

## DISCUSSION

**A. Standard of review**

Rule 72(a) of the Federal Rules of Civil Procedure allows a party to object to a non-dispositive order issued by a magistrate judge. Fed. R. Civ. P. 72(a). To prevail, the objecting party must "establish that the order is clearly erroneous or contrary to law." Howard v. Hartford Life & Acc. Ins. Co., 769 F. Supp. 2d 1366, 1372 (M.D. Fla. 2011); see also Slater v. Progress Energy Serv. Co., LLC, No. 8:09-cv-208, 2010 WL 1408431, at *2 (M.D. Fla. Apr. 6, 2010). "Clear error is a highly deferential standard of review." Holton v. City of Thomasville Sch. Dist., 425 F.3d 1325, 1350 (11th Cir. 2005) (citation omitted). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. "A magistrate's order is contrary to law when it fails

---

[4] Defendant moved for an Emergency Stay of the Order (Doc. #32) because Judge Mirando's Order required it to produce the Activity Logs by May 23, 2014 (Doc. #29). The Court granted Defendant's Motion (Doc. #32) and stayed Defendant's compliance with the Order (Doc. #29) until further notice. (Doc. #33).

3

to apply or misapplies relevant statutes, case law, or rules of procedure." Malibu Media, LLC v. Doe, 923 F. Supp. 2d 1339, 1347 (M.D. Fla. 2013) (citations omitted). "Moreover, a magistrate judge is afforded broad discretion in issuing non-dispositive pretrial orders related to discovery." Id. (citations omitted).

**B. Analysis**

Defendant's objections to Judge Mirando's Order (Doc. #29) are twofold: (1) the Order contravenes Florida's "mediation privilege" that protects communications made in mediation from subsequent disclosure; and (2) the Activity Logs cannot lead to the discovery of non-privileged, admissible evidence relevant to Plaintiff's bad faith claim. (Doc. #35 at 4-14). Defendant also contests the Order's failure to restrict distribution of the Activity Logs from reaching non-parties to the underlying mediation. (Doc. #35 at 3). The Court will address each argument in turn.

1. Mediation privilege

The Mediation Confidentiality and Privilege Act provides that "all mediation communications shall be confidential" and "[a] mediation participant shall not disclose a mediation communication to a person other than another mediation participant or participant's counsel." Fla. Stat. § 44.405(1). "Mediation communication" is defined as "an oral or written statement, or nonverbal conduct intended to make an assertion, by or to a mediation participant made during the course of a mediation, or prior to mediation if made in furtherance of a mediation." Fla. Stat. § 44.403(1).

As previously stated, Judge Mirando found that the Activity Logs, which contained summaries and analyses of communications during the underlying mediation, fell outside the mediation privilege. (Doc. #29 at 5-6). She reasoned that while the summaries on

their face were "mediation communications," the privilege still did not apply as to Plaintiff because he and his counsel participated in the underlying mediation. ([Doc. #29 at 5-6](#)). From there, Judge Mirando reasoned that the internal analyses of the communications that Defendant's adjusters wrote did not qualify as mediation communications, as statutorily defined. ([Doc. #29 at 6](#)) Contrary to Defendant's contention, Judge Mirando's findings are neither clearly erroneous nor contrary to the law.

A strict reading of [§ 44.405(1)](#) confirms that the mediation privileged is inapplicable here because Plaintiff and Defendant both participated in the underlying mediation and there has been no effort to disclose the Activity Logs to third persons or entities. See [MapleWood Partners, L.P. v. Indian Harbor Ins. Co., 295 F.R.D. 550, 626 (S.D. Fla. 2013)](#) (declining to extend the mediation privilege to plaintiff's documents from a mediation with defendant in a previously litigated case because "the prohibition on disclosure of mediation communications does not apply among participants to the mediation"); see also [Allied World Assur. Co. v. Lincoln Gen. Ins. Co., 280 F.R.D. 197, 203 (M.D. Pa. 2012)](#) (ordering the production of documents related to a mediation in which the plaintiff and defendant participated (citation omitted)).

Despite [§ 44.405(1)](#)'s clear language, Defendant maintains that the Activity Logs are privileged because they were drafted immediately after the underlying mediation and created only because of it. ([Doc. #35 at 6-7](#)). As grounds, Defendant maintains that Florida case law extends the mediation privilege to "direct products of mediation between the parties" and cites to [Chabad House-Lubavitch of Palm Beach Cnty., Inc. v. Banks, 602 So. 2d 670 (Fla. Dist. Ct. App. 1992)](#). ([Doc. #35 at 6](#)). However, his reliance on [Chabad](#) is misplaced. The court addressed – not discovery of mediation-related

documents – but an inconsistent jury verdict in a breach of contract case. Chabad, 602 So. 2d at 672. In dicta, the court briefly noted that the trial court erred in admitting into evidence a document that was a direct product of mediation between the parties. Id. This is not, as Defendant contends, a recognition that all work product stemming from mediation enjoys the mediation privilege. Even if Chabad did stand for such a proposition, the court addressed the inadmissibility of such information at trial and not its discoverability. Id.

To skirt § 44.405(1), Defendant maintains that it is not withholding communication between mediation participants; but rather, it is withholding its analysis of the entire mediation proceeding. (Doc. #35 at 9). This distinction is not persuasive, as the Court sees no reason why a summary or analysis of a mediation communication would have more protection than the communication itself.

Next, Defendant relies on Fla. Stat. § 44.405(2) to show that Judge Mirando's Order is clearly erroneous. (Doc. #35 at 8). Section 44.405(2) states that a "mediation party has a privilege to refuse to testify and to prevent any other person from testifying in a subsequent proceeding regarding mediation communications." Fla. Stat. § 44.405(2)). As best as the Court can tell, Defendant avers that, because the mediation privilege prevents a participant from testifying at trial about his knowledge of "mediation communications," it follows that the privilege protects the participant from gaining such knowledge in the first place. (Doc. #35 at 8). Defendant draws no authority to the Court's attention to support this inference.

The Court finds Defendant's remaining arguments on the mediation privilege equally untenable. To the extent Defendant argues that § 44.405(1) does not require

mediation participants to share with the other side all statements and communications, Defendant has neither argued nor characterized the Activity Logs to be the type of document that would not be discoverable. For example, Defendant does not maintain that the Activity Logs contain confidential information that would afford a strategic or legal advantage to Plaintiff. See e.g., Moriber v. Dreiling, 95 So. 3d 449 (Fla. Dist. Ct. App. 2012) (noting concern with the advantage an opposing party could gain by receiving an inadvertent disclosure of a confidential mediation statement while the case was ongoing). Also, Defendant's bald assertion that compelling production of the Activity Logs will contravene public policy and "result in a chilling effect on the ability of litigants to openly discuss dispute resolution during mediation, and negatively impact the mediation process" is unpersuasive without more. (Doc. #35 at 9).

Accordingly, the Court finds no clear error in Judge Mirando directing Defendant to produce the Activity Logs.

2. Relevance of the Activity Logs

Even if the Activity Logs fall outside the mediation privilege, Defendant argues they are not discoverable under Rule 26(b)(1) of the Federal Rules of Civil Procedure and Rule 408 of the Federal Rules of Evidence. (Doc. #35 at 10-14). According to Defendant, because the Activity Logs summarize privileged mediation communications that is inadmissible at trial, producing them to Plaintiff could not lead to the discovery of admissible evidence. (Doc. #35 at 10-11).

Upon review of Fed. R. Civ. P. 26(b)(1) in its entirety, Defendant's argument is perplexing. Specifically, Rule 26(b)(1) states,

> [u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery

> regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. *Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.* All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1) (emphasis added). The standard for relevancy is not admissibility at trial, as Defendant contends. To that end, it is reasonable that Plaintiff may discover additional source(s) of information or a new avenue for admissible evidence regarding his bad faith claim upon reviewing the Activity Logs. Additionally, in first-party statutory bad faith action under Fla. Stat. § 624.155, as here, the Supreme Court of Florida has stated that "all materials, including documents, memoranda, and letters, contained in the underlying claim and related litigation file material that was created up to and including the date of resolution of the underlying disputed matter and pertain in any way to coverage, benefits, liability, or damages, should also be produced[.]" Allstate Indem. Co. v. Ruiz, 899 So. 2d 1121, 1129-30 (Fla. 2005). The Activity Logs, which Defendant's adjusters prepared and placed in the UM claim file, fall squarely within this type of discoverable material. The Activity Logs, therefore, are relevant to and discoverable in the current action.

      Based on the foregoing, Defendant has failed to establish that Judge Mirando's Order (Doc. #29) is clearly erroneous or contrary to law. See Howard, 769 F. Supp. 2d at 1372. Since the Court cannot say definitely and with firm conviction that "a mistake has been committed," the Court will not overturn Judge Mirando's Order (Doc. #29).

Holton, 425 F.3d at 1350. Consequently, Defendant shall produce the Activity Logs to Plaintiff.

Accordingly, it is now

**ORDERED:**

(1) Defendant State Farm Mutual Automobile Insurance Company's Objections to Magistrate's Order Regarding Plaintiff's Motion to Compel Production (Doc. #35) are **DENIED**.

(2) The stay on Defendant's compliance with Judge Mirando's Order dated May 14, 2014 (Doc. #29) is lifted. Defendant shall produce the six (6) activity log notes reflected in its privilege log (Doc. #27-3) by **June 20, 2014.**

**DONE** and **ORDERED** in Fort Myers, Florida this 13th day of June, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

9